### KYRIAKOS v. POLEMIS et al.

District Court, S. D. New York.

Feb. 1, 1945.

See also 53 F.Supp. 715.

Arkin, Lebovici & Kottler, by Joseph Kottler, all of New York City, for libelant.

Reid, Cunningham & Freehill, by Frederick H. Cunningham, all of New York City, for respondents.

·BONDY, District Judge.

This is a libel to recover for injuries sustained by the libelant through the alleged negligence of the respondents, for maintenance and cure, and unpaid wages.

The respondent Polemis was not served. The libel against the British Ministry of War Transport, the time charterer of the ship Theomitor, was dismissed on consent. At the trial the libelant withdrew his claim based on the alleged unseaworthiness of the Theomitor and elected to proceed under the Jones Act, 46 U.S.C.A. § 688.

The libelant is a citizen of Greece. He was assaulted at Fernandina, Florida, by a fellow seaman while serving as a fireman on the Theomitor, a vessel flying the flag of Greece and owned in Greece by the respondent Michael Polemis.

The libelant was hired for a voyage from Newport News, Virginia to England and back to the United States.

The fact that the libelant was an alien seaman serving upon a foreign ship owned and operated by aliens does not deprive him of the right to maintain this action under the Jones Act, in view of the fact that he resided in the United States, that he was injured within territorial waters of the United States while in the service of the ship on a voyage that began and was to end in the United States. Gambera v. Bergoty, 2 Cir., 132 F.2d 414, certiorari denied 319 U.S. 742, 63 S.Ct. 1030, 87 L.Ed. 1699. See Uravic v. F. Jarka Co., 282 U.S. 234, 239, 51 S.Ct. 111, 75 L.Ed. 312. Compare The Paula, 2 Cir., 91 F.2d 1001. Nor is he deprived of his right to maintain this action under the Jones Act for damages and for maintenance and cure, because the injuries were sustained by him while ashore and at a distance from the ship, in view of the fact that they were sustained while he was on shore leave and in the service of the ship. Aguilar v. Standard Oil Company, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; O'Donnell v. Great Lakes Company, 318 U.S. 36, 63 S. Ct. 488, 87 L.Ed. 596; Marceau v. Great Lakes Transit Corporation, 2 Cir., 146 F. 2d 416.

The respondents contend that the libelant has not established that they or any of them were the employers of the libelant and

that therefore he could not maintain his libel against them under the Jones Act.

The libelant and other members of the crew were engaged at the office of the respondent General Steam Navigation Co., Ltd., of Greece, generally known, and herein referred to, as the Greek Line, and the contracts for their employment were prepared there. The libelant testified that he delivered his contract to the master of the Theomitor after he was injured. Neither the contract nor articles were produced at the trial. Nor does it appear that he knew that the Greek Line was acting as an agent and not as a principal. See Lewis v. United States Nav. Co., D.C., 57 F.Supp. 652. At the port of Fernandina, Florida, the master of the Theomitor named "Goulandris Bros." as the owners of the Theomitor.

In answer to interrogatories, the respondents stated that Michael Polemis was the registered owner and that the respondent Goulandris Bros. (Hellas) Ltd. was the agent of the Theomitor, and that the respondents Basil, Nicholas and Leonidas Goulandris controlled Goulandris Bros. (Helles) Ltd.

The agent and general manager of the New York office of the Greek Line made contradictory statements under oath. He gave answers that were evasive, and he himself often confused names of the respondents. He testified that Basil, Nicholas and Leonidas Goulandris, partners known as Goulandris Bros., controlled the Greek Line and that he assumed they were officers of the Greek Line; that the cable address of the Greek Line is "Goulandbros"; that the libelant and other members of the crew of the Theomitor were procured by the Greek Line and that the contracts for their employment were prepared at its office; that the Greek Line was authorized to operate passenger boats between Greece and the United States. He testified that the respondent Polemis was the owner of the Theomitor, that Polemis lives in Greece and therefore had agents running his ships, the general understanding being that the agent was Goulandris Bros. (Hellas) Ltd. rather than Goulandris Bros. However, in an examination before trial in a State Court action he had testified that Goulandris Bros. are the agents of Polemis. Until confronted with testimony given by him at another trial he denied that the individual respondents trading as Goulandris Bros. had funds here on deposit in the special account of the Greek Line. Although he had denied, he finally admitted, that the funds of Goulandris Bros. were mingled with the funds of Goulandris Bros. (Hellas) Ltd., in the special bank account of the Greek Line. All freight earned by ships of the Goulandris companies was deposited in a special account of the Greek Line and all charges against the ships were advanced out of that account and charged to and borne by the Goulandris Bros. (Hellas) Ltd., no matter to whom the ships belonged. On the books of the Greek Line accounts were kept in the name of each ship, and the freight earned and expenses paid on account of each ship were credited and charged on the account and the totals thereof transferred periodically to an account kept in the name of Goulandris Bros. (Hellas) Ltd.

The expense of the transportation of the libelant to Newport News and some of his hospital and physicians' bills were advanced in this manner by the Greek Line and ultimately borne by Goulandris Bros. (Hellas) Ltd.

The master of the Theomitor in his deposition stated that he joined the ship in 1939 and was employed by Polemis Brothers, the owners of the Theomitor. He admitted that the libelant was engaged in New York and sent to him at Newport News. He also testified that Goulandris Bros. London, operated the Theomitor and that Basil and Leonidas Goulandris, and perhaps also Nicholas Goulandris, are partners and owners of that company; that he did not know whether Goulandris Bros. (Hellas) Ltd. were the owners and operators prior to the invasion of Greece. When he registered the vessel with the U. S. Customs Service at Fernandina he listed Goulandris Bros. as owners.

■ The Court believes that the evidence permits the inference that the Goulandris brothers controlled Goulandris Bros. (Hellas) Ltd., Goulandris Bros. London, and the Greek Line, and that they, or some of them, controlled and operated the Theomitor.

■ As was said in Armit v. Loveland, 3 Cir., 115 F.2d 308, 314:

"If the defendants so scrambled their relations as to render it difficult for anyone to say for a certainty whether the plaintiff was employed by only one or by all of them that should not serve to defeat the plaintiff's right by relieving a responsible defendant. To hold otherwise would be

to put a premium upon the confusion which the defendants themselves created. The ones responsible for it should be the ones to dispel it, which they can do by adjusting their respective liabilities inter se. In the circumstances here present, we can see no legal necessity for requiring the plaintiff to grope around in search of his employer's identity among corporate entities and individuals, all of whom are shoots off the same stock and engaged in a common activity."

The libelant testified that Bouritis, the fellow seaman who assaulted him, had told him that he smoked hasheesh, which made him feel like a king, that after smoking he danced and began to sing. On one occasion he had said, in the presence of the boatswain, "Now I am a king," and "Whoever talks to me I will kill him." On another occasion he saw Bouritis strike a fireman on the head with a pail in the presence of the boatswain and Bouritis again said that he would kill anyone who spoke to him. The libelant and the boatswain took the fireman to the captain and the fireman told the captain that Bouritis broke his head without any reason. The boatswain told the captain that Bouritis was a bad character and that he smoked hasheesh.

After the ship arrived at Fernandina the libelant, the boatswain and others, told the captain that Bouritis was a trouble maker, that he smoked hasheesh, that he struck the consul at Antwerp and asked the captain "What will you do with him?" And the captain replied, "I'll see what I should do."

One night thereafter, while acting as watchman with another, libelant upon investigating cries for help saw Bouritis, who had taken a colored woman into the crew's quarters, strike Almorantis, another fireman, throw him to the ground and bite him in the back of the neck. When the libelant removed the colored woman from the ship Bouritis said "I'll kill you." Next morning when the captain returned to the ship libelant told the captain "We had trouble with Bouritis again" and that Bouritis threatened to kill him because he put the woman ashore and all else that occurred. All the captain did was to send for Bouritis, to wink his eye, to ask Bouritis "Did they take your Mrs. from the boat?" and to tell libelant to go to sleep.

The next night libelant, while returning to the ship after having gone ashore on leave to buy articles needed by him for the voyage to England, was stabbed five times and seriously injured by Bouritis, without provocation.

Almorantis, a seaman of the Theomitor, who was also stabbed by Bouritis, testified that he was hired at the office of the Greek Line, that the first day out at sea Bouritis was smoking hasheesh, singing and dancing; that during the voyage to Fernandina Bouritis without any provocation struck a coal passer on the head with a pail in the presence of the boatswain, that on another occasion the boatswain was in time to prevent him striking the third fireman, that on still another occasion he slapped the face of the witness without any provocation, that he told the first engineer that every time Bouritis came on watch he smoked hasheesh and that he was out of his mind, and that Bouritis had struck witness. He further testified that after the vessel arrived at Fernandina at about midnight Bouritis brought a colored woman to the quarters of the crew, and that when the witness asked him why he did so Bouritis used abusive language, struck him, kicked him, threw him down and bit him in the back of his neck; that when the libelant and the other watchman came to his rescue and took the woman off the boat Bouritis said to the libelant "I will make you pay for this"; that thereafter when ashore Bouritis stabbed the libelant and the witness, saying "I will kill him and you all."

█ The Court believes that Bouritis was a man of a vicious and violent character and irrational, and though the master denies it, that the master knew, or that he at least should have known it, and that he failed in his duty to use reasonable care for the safety of the crew. Koehler v. Presque-Isle Transportation Co., 2 Cir., 141 F.2d 490.

█ The Court further believes that the fact that the assault did not take place on board the ship but ashore while the ship was at a port of call and while the libelant was in the service of the ship did not relieve the employers from responsibility for the foreseeable consequences of the master's neglect to protect the crew.

█ The libelant is entitled to $3,399 for maintenance, that is at the rate of $3 per day from September 10, 1941, the day on which he left the Marine Hospital, to October 17, 1944, which is six months after the date of the trial, by which time it was reasonable to believe that he will have received the best possible cure. He is also

entitled to $300 for expenses already incurred and $500 which it was reasonable to believe he will still incur for hospitalization and medical care in seeking such cure. He is also entitled to unpaid wages at the rate of $208 per month for six months, less 10 days pay which he received, amounting to $1,178.67.

■ For the nature of the injuries he has sustained, the pains he suffered and it is reasonable to believe he will suffer, and for the impairment of his earning power in the past and in the future, the Court awards the libelant the sum of $17,500 as damages.