**Emma E. MUNGIN, Administratrix of the Estate of Elijah Mungin, Deceased, et al.**

v.

**CALMAR STEAMSHIP CORPORATION,**

v.

**ITO CORPORATION OF BALTIMORE**
(Formerly Jarka Corporation of Baltimore).

**Civ. A. No. 71–288.**

United States District Court,
D. Maryland.
May 4, 1972.

See also D.C., 342 F.Supp. 484.

**480**

Bernard J. Sevel and Raymond J. Cardillo, Baltimore, Md., for plaintiffs.

William R. Dorsey, III, Baltimore, Md., for defendant.

NORTHROP, Chief Judge.

This is an action brought by Phillip Michael Hamilton, illegitimate son of deceased Elijah Mungin, and Isabelle Hamilton, as mother and next friend of John Timothy Hamilton, Diane Valda Hamilton, Eunice Elaine Hamilton and Lloyd William Hamilton, the four minor illegitimate children of the deceased, seeking recovery for the alleged wrongful death of their father.[1] While the vehicle for plaintiffs' recovery has not been clearly articulated, the Court concludes that this suit is properly brought pursuant to the general maritime law, insofar as it seeks recovery for deceased's wrongful death allegedly resulting from defendant's breach of its warranty of seaworthiness. Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

All five plaintiffs are the illegitimate children of deceased. Defendant argues that the cause of action created by *Moragne* does not comprehend illegitimate children within the class of persons entitled to recover. The Court, in *Moragne*, specifically refused to decide which persons could assert a right to recover under this new theory. However, it appears to this Court that the desired uniformity in the maritime law that was the basis for the decision in *Moragne* would be diluted if guidance were sought from any authority other than existing statutory rights to recover under maritime law. Consequently, this Court concludes that those entitled to recover under the Death On The High Seas Act, 46 U.S.C. § 761 *et seq.*, and the Jones Act, 46 U.S.C. § 688, are likewise entitled to recover under *Moragne*.

1. Claims were filed in the same action by Emma E. Mungin, in her capacities of widow and personal representative of deceased. Those claims will be treated in a separate opinion. A claim for personal injury was filed by Thermon A. Brown, but an Order of Satisfaction has been entered in that matter.

In considering suits under these statutes, the courts have consistently allowed recovery by decedent's illegitimate children. Petition of Risdal & Anderson, Inc., 291 F.Supp. 353 (D.Mass. 1968); In re Risdal & Anderson, Inc., 266 F.Supp. 157 (D.Mass.1967); Doyle v. Albatross Tanker Corp., 260 F.Supp. 303 (S.D.N.Y.1965), aff'd 367 F.2d 465 (2nd Cir.1966); Civil v. Waterman S. S. Corp., 217 F.2d 94 (2nd Cir. 1954); Middleton v. Luckenbach S. S. Co., Inc., 70 F.2d 326 (2nd Cir.) cert. denied, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934). *See also* Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). Consequently, the illegitimate children of decedent are not barred from recovery in this *Moragne* cause of action.

In the cases cited above, consistent with the applicable statute, suit was brought by the personal representative of deceased. The present action is brought by the mother of the minor children and by Phillip Michael Hamilton, on his own behalf (he attained his majority after his father's death but prior to institution of this action). Deceased's personal representative is his legal wife, Emma E. Mungin. Because there is yet no requirement that the personal representative bring a *Moragne* action, and because there may exist some ill-feeling between the children and their father's wife, the matter will be allowed to proceed in its present form. *Cf.* In re Risdal & Anderson, Inc., *supra*.

### Liability

Testimony at trial showed that at the time of his death, Elijah Mungin, a longshoreman, was engaged in the loading of fifty foot, eighteen ton, steel I-beams into the lower hold, number two hatch of the S.S. MARYMAR. The loading process involved the lowering of these beams into the hold by means of a crane; the beams were suspended from the crane by two chains, one forward and one aft. According to the testimony of Mr. Linwood Reaves, a longshoreman who was working with Elijah Mungin

on the date of the accident, deceased was at all times standing in a safe place, in the wings, not below the square of the hatch, in fact in the only position available during the loading procedure. Reaves further testified that as a beam was being lowered into the hatch, he saw the forward chain snap "in mid air," causing the forward end of the beam to slide into the hatch. While this portion of the beam missed deceased on its descent, when the aft end plunged into the hold, it caused the forward end to be lifted abruptly into the air. As it rose, the beam caught deceased, flipping him some eight feet into the air, causing the injuries which resulted in his death. This evidence was uncontradicted by defendant.

The doctrine of unseaworthiness is a species of liability without fault. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Therefore, the only inquiry is whether the unseaworthy condition exists. In Connorton v. Harbor Towing Corp., 237 F.Supp. 63 (D.Md.1964), aff'd 352 F.2d 517 (4th Cir. 1965), this Court had occasion to consider a factual situation similar to the present. In that case, the barge *Indian* was being towed when the tow strap (a rope) parted causing injury to plaintiff. There was no direct evidence of the condition of the strap at either the time or place of the parting. The Court continued:

> The rope was being used in a proper manner and was properly secured to both tugboat and the barge. The logical inference, then, is that the rope parted because it was defective, or, in other language, that it was unseaworthy. [237 F.Supp. at 66].

This Court went on to conclude that an unexplained accident of this sort must be rebutted by convincing proof or it becomes a presumption of negligence. *See also* Petterson v. Alaska S. S. Co., 205 F.2d 478 (9th Cir.), aff'd 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944);

Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

In the present case, there is no evidence of the cause of the breaking of the chain; the only eyewitness testified that it merely "snapped in mid air." The chain was being used for the purposes for which it was designed. Therefore, absent any evidence to the contrary, this Court must conclude that the chain was defective, i. e. unseaworthy. Consequently, plaintiffs are entitled to recover for the wrongful death of their father.

### Damages

In the absence of any indication from the Supreme Court that *Moragne* damages should differ from those generally permissible under existing statutory authority and in the interest of insuring uniformity in maritime law, the usual measure of damages, actual pecuniary loss, will be awarded.

In awarding damages, the court should reasonably compensate . . . the minor . . . [children] until . . . [they] become 21, Stark v. Chicago, No. Shore & Milwaukee Ry. Co. [7 Cir.], 203 F.2d 786 (1953) . . . for the loss of contributions that they would have received for support out of the accrued and future gross earnings of the decedent had he lived . . .. Also, privation of parental nurture and guidance to a minor child is an element of pecuniary loss long recognized by the federal decisions. Michigan Central R. Co. v. Vreeland, *supra* [227 U.S. 59, 33 S.Ct.

192, 57 L.Ed. 417 (1913)]; Petition of Risdal, *supra* [& Anderson, Inc., 291 F.Supp. 353 (D.Mass.1968)].

Petition of Canal Barge Co., 323 F.Supp. 805, 821 (N.D.Miss.1971). *See also* Daughdrill v. Diamond "M" Drilling Co., 305 F.Supp. 836 (W.D.La.1969). In assessing the benefits which would have accrued to the children, fringe benefits are to be included. Petition of United States Steel Corp., 436 F.2d 1256 (6th Cir. 1970). *See also* Moore-McCormick Lines, Inc. v. Richardson, 295 F.2d 583 (2nd Cir. 1961).

Deceased died on May 6, 1970. Testimony revealed that for the year 1968, his gross wages were $7,902.44, an average of $151.07 per week. The evidence further showed that decedent contributed approximately an average of $103 per week to the Hamilton household during the period prior to his death. This Court feels that if this figure were reduced to $90, it would more accurately reflect decedent's actual contributions.[2] The household was comprised of himself, his five minor illegitimate children [3] and the mother of the children. Because adults generally have needs exceeding those of children, e. g. greater appetites, more expensive clothing, the Court finds that only two-thirds of this contribution, $60 per week, or $12 per week per child, accrued to the benefit of plaintiffs. The only evidence introduced as to other benefits accruing to the children was the existence of a family health and accident insurance policy, to which deceased made no contribution. While difficult to establish the value of such to plaintiffs, the value accruing to them based roughly upon replacement cost will be estimated at $200 per year, or $4 per week per child.

---

2. If the $103 figure were accepted, computations made by defendant, which consider deceased's other weekly disbursements, indicate that deceased would have had an average of $4.38 per week for himself, a sum hardly sufficient to support his fishing, hunting and pool shooting hobbies and various incidental expenses.

3. At the date of death, the ages of the children were as follows:

| | | |
|---|---|---|
| Phillip Michael | 20 years | 8 months |
| Lloyd William | 18 years | 5 months |
| Eunice Elaine | 14 years | 10 months |
| John Timothy | 9 years | 9 months |
| Diane Valda | 7 years | 3 months |

These figures will be utilized to compute the awards both to the date of judgment and future losses, notwithstanding the fact that a new union contract which would have increased deceased's salary became effective in November, 1971. The possibility of injury to deceased coupled with the longshoreman's strike of the past winter is deemed to offset any such increase to date.

As regards future loss, the Court must consider how much decedent would have had available for his contribution to plaintiffs and how much of that money he would have contributed to them. Petition of Risdal & Anderson, Inc., *supra*, 291 F.Supp. at 357. Evidence was admitted which showed that the union contract in effect from November, 1971 to November, 1974 would have greatly increased decedent's wages. However, had deceased lived, he would currently be 60 years, 8 months, and under the current contract would be eligible for a pension of $300 per month on his sixty-second birthday. There is no indication as to whether deceased would have availed himself of this prerogative. If he had opted this course, it is obvious that it would have been extremely difficult for him to maintain the direct contribution of $12 per week per child. Therefore, while deceased would have had a greater sum to contribute to the children over the next year and a half, it is entirely possible that he would have had a lesser sum to contribute in all or at least some of the years after his sixty-second birthday during the minority of at least some of the plaintiffs. Because of the speculative nature of such an inquiry, the Court concludes that, on the average, deceased would have continued to contribute the same $12 per week per child to the plaintiffs.

Therefore, the awards to plaintiffs, representing recovery for losses sustained from date of death to present and future losses, from present to the attainment of majority (commuted at 4%) are as follows:

| | |
|---|---|
| Phillip Michael | $  275. |
| Lloyd William | 2111. |
| Eunice Elaine | 4438. |
| John Timothy | 6727. |
| Diane Valda | 7704. |

As regards loss of nurture and guidance, relevant considerations are education and character of decedent and attention devoted to his children while alive. Petition of Risdal & Anderson, Inc., *supra*. In this respect, it is critical to note that the deceased and mother of the plaintiffs were not married and that deceased had five children by his legal wife (to whom, incidentally, he made somewhat regular contributions for support). The only evidence bearing on the relation of deceased and plaintiffs was that he would sometimes take the older children fishing and the younger ones to the park. Under these circumstances, the Court concludes that $20 per child per month will compensate for the loss of nurture and guidance.

Therefore, the plaintiffs' recovery for the loss of nurture and guidance from date of death to present and from the present to the attainment of their majority (commuted at 4%) is as follows:

| | |
|---|---|
| Phillip Michael | $   80. |
| Lloyd William | 514. |
| Eunice Elaine | 1397. |
| John Timothy | 2298. |
| Diane Valda | 2687. |

The total awards to plaintiffs are as follows:

| | |
|---|---|
| Phillip Michael | $  355. |
| Lloyd William | 2625. |
| Eunice Elaine | 5835. |
| John Timothy | 9025. |
| Diane Valda | 10391. |

Therefore, it is ordered that judgment be entered for the plaintiffs, the five dependent children of deceased, Elijah Mungin, for the aforementioned sums.