**COURTESY CHEVROLET, INC., and R. Mitchel McClure**

v.

**S. W. BEECH, Jr.**

Civ. No. 719.

United States District Court,
M. D. Tennessee,
Columbia Division.
July 13, 1972.

William B. Cain, Moore, Henry, Henry, Lewis & Cain, Jerry Colley, McFarland, Colley, Blank & Jack, Columbia, Tenn., for plaintiffs.

Knox Bigham, Bigham & Binkley, Lewisburg, Tenn., for defendant.

## ORDER

FRANK GRAY, Jr., Chief Judge.

This diversity suit for damages is before the court on the defendant's Motion for Summary Judgment. Defendant's interrogatories and plaintiffs' answers thereto have been filed, as well as briefs by both parties and an affidavit in support of the plaintiffs' position.

Plaintiff Courtesy Chevrolet, Inc. (hereinafter called "Courtesy"), is a California corporation, and plaintiff R. Mitchel McClure, a California resident, is president and majority stockholder thereof. The defendant, a Tennessee resident, was president of the Tennessee Walking Horse Breeders' and Exhibitors' Association (hereinafter referred to as "the Association") at all relevant times. The Association is a Tennessee corporation located in Lewisburg, Tennessee. The objective of the Association is to collect, record and preserve the pedigrees of the strain of horses known as the Tennessee Walking Horse, to publish a "Register," and to deal with other matters that pertain to the breeding, exhibiting and sale of Tennessee Walking Horses (By-Laws, Article II). In 1962, Courtesy, apparently because of the interest of its president, plaintiff McClure, went into the business of breeding, training, showing, buying and selling Tennessee Walking Horses. The business was completely owned by Courtesy, which paid all of the expenses of operation. Plaintiff McClure's interest in the business was solely that of a stockholder of Courtesy, although his answers to interrogatories indicate that he may have owned the land on which the operation was conducted and rented it to Courtesy. (This statement is somewhat contradicted by numbered paragraph 28 of the complaint with reference to the investment made by plaintiff Courtesy in the operation.)

The genesis of the controversy which resulted in the present suit can be said to have been a letter written by the Association's executive secretary in the

spring of 1963. This letter, accompanying a guest card sent to Mr. Paul Raines of Memphis, Tennessee, to judge a horse show in Sacramento, California, "ridiculed and disparaged the California exhibitors and their shows." Plaintiff McClure, then the Regional Vice-President of the California District, learned of the contents of the aforesaid letter and submitted a complaint to the Association on behalf of the California exhibitors. The Association set July 13, 1963, as the date for a hearing on McClure's complaint in Lewisburg, Tennessee. McClure was unable to attend, and, as a result of his failure to appear, the Association, on July 15, 1963, notified the plaintiffs by letter that the services of the Association were denied them. As a result of the sanctions thus imposed by the Association, Courtesy's horse business was damaged and an antitrust action against the Association was instituted by Courtesy in the United States District Court for the Southern District of California, Central Division. The antitrust suit culminated in an award to Courtesy of treble damages in the amount of $10,200, costs of $4,603.-92, and attorneys' fees of $10,000.[1]

The case at bar alleges that the acts and conduct of defendant Beech, as president, set in motion the chain of events that resulted in the California litigation. More specifically, the plaintiffs allege that McClure had phoned Beech prior to the hearing date and explained to the latter why he could not attend the hearing, that the defendant failed to disclose these facts to the Board of Directors, thereby breaching his fiduciary obligation, and that this failure to disclose was the *sine qua non* of the Board's subsequent imposition of sanctions against the plaintiffs and resultant injury. In essence, therefore, the present suit seeks to hold Beech accountable for the damages allegedly sustained by the plaintiffs as a result of the Association's actions, as well as for the expenses incurred in the California lawsuit.[2]

With the exception of certain fees and expenses (incurred in the California case), the damages sought in the instant case by plaintiffs are identical to the damages sought by Courtesy in the antitrust suit (Answers to Interrogatories Nos. 3, 4, 19, and 20). It has also been established that the California judgment awarding damages, costs and attorneys' fees has been satisfied in full (Answers to Requests for Admissions Nos. 5 and 6).

The defendant's motion is based on the proposition that the satisfaction of the prior judgment precludes recovery here. The plaintiffs counter with the contention that the two actions in question are sufficiently dissimilar to make the rule against double recovery inapplicable. This court must determine, on the Motion for Summary Judgment, whether there is any genuine issue as to any material fact in dispute and, more precisely, whether the prior satisfaction bars recovery in this case.

■ Viewing the plaintiffs' case in its most favorable light, it must be concluded that defendant's actions, together with the subsequent disciplinary sanctions imposed by the Association, were responsible for the injury of which the plaintiffs complain. The injury resulted from the exercise of the Association's power by and through the defendant and the Association's other agents, officers and employees, and it matters not whether Beech is deemed an agent of the corporation or a co-obligor or joint tortfeasor therewith. Furthermore, the conclusion is inescapable that the same injury underlies the claim for damages in the antitrust suit and underlies the claim for damages in the instant case (with the exception of the claims for expenses and attorneys' fees made in the instant case and treated *infra*). A read-

---

1. The case, Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' and Exhibitors' Association, is reported in 344 F.2d 860 (9th Cir. 1965), and 393 F.2d 75 (9th Cir. 1968).

2. The testimony relating to Beech's conduct is part of the record in the trial of the cause in California.

ing of the two complaints in question makes it clear that the injury complained of in both cases is identical. Moreover, there can be no doubt but that the question of the damages allowable for that injury was fully litigated, determined and satisfied in California. On these facts, it would appear that defendant Beech is jointly liable with the Association;[3] that the judgment against the Association has been satisfied in full; and that the prior satisfaction constitutes a satisfaction as to both plaintiffs of the claim against the defendant made herein. Satisfaction against the Association, on these facts, constitutes a satisfaction against defendant Beech under either Tennessee or California law. Royal Indemnity Co. v. Olmstead, 193 F.2d 451 (9th Cir. 1951); Schoenly v. Nashville Speedways, Inc., 208 Tenn. 107, 344 S.W.2d 349 (1961).[4]

■ Although the cause of action in the case at bar is different from that pursued in the former suit and two of the parties in the instant case were not parties of record in the California action, these distinguishing characteristics do not render the rule against double recovery inapplicable. The focus here is on the injury and the injury alleged is identical in both suits. The rule that is controlling here is based on the equitable theory that forbids recovery greater than the loss or injury sustained and its application is compelled by the facts cited *supra*. Pillo v. Reading Co., 232 F. Supp. 761 (E.D.Pa.1964). The question of the amount of damages recoverable for the injury sustained has already been determined by the District Court in California, and it is not within the province of this court to review those findings. And, inasmuch as that earlier judgment has been satisfied, this court is presented with a situation that falls squarely within the purview of the double recovery prohibition and its underlying rationale of unjust enrichment. To allow further recovery of damages by either Courtesy or its president would be

to allow a "second bite from the apple." That bite is prohibited.

■ In addition to the damages sought for injury to the horse business, the plaintiffs seek to recover attorneys' fees and expenses incurred in the previous lawsuit. This claim is in excess of $100,000. It must be noted that the question of attorneys' fees and expenses was decided by the District Court in California and was further considered by the United States Court of Appeals for the Ninth Circuit, which increased the award. Although this court would tend to believe that the allowance was inadequate in light of the nature of the subject matter of the litigation and the time expended thereon, it is not within its power to substitute its judgment for that of either the District Court or the Court of Appeals or to sit in review of decisions of those courts. Accordingly, the allowance of additional attorneys' fees and expenses cannot be had in the case at bar, the question having been decided in the California judgment and that judgment having been satisfied.

■ The plaintiffs seek to avoid the thrust of the rule against double recovery by reliance upon a rule of law which, in essence, provides that, where a wrongdoer involves one in litigation with others and/or necessitates the incurring of expenses to protect his interests, such expenses may be recovered as damages from that wrongdoer. *Inter alia*, plaintiffs cite the annotation appearing in 45 A.L.R. at page 1183, et seq., by way of explanation and support. The court is of the opinion, however, that application of that general rule in the instant case would conflict with the double recovery prohibition. But notwithstanding that conflict, a careful study of the cases cited by the plaintiffs and appearing in the annotation cited *supra* reveals that the rule contemplates some variation of an indemnity theory. [*See:* Turner v. Zip Motors, 245 Iowa 1091, 65 N.W.2d 427, 45 A.L.R.2d 1174

---

3. See: Swain v. Tennessee Copper Co., 111 Tenn. 430, 78 S.W. 93 (1903).

4. In Accord: Restatement, Judgments, § 95, and Restatement, Torts, § 886.

(1954).] It certainly cannot be said to authorize recovery by the original plaintiff against one of the privies of the original defendant(s) for attorneys' fees following a successful suit for damages against that original defendant (wherein attorneys' fees were awarded).

Consequently, the court is again compelled to hold that the question before it has been determined in the previous litigation.

Insofar as this decision forecloses relief to both Courtesy and Mr. McClure, even though the latter was not a party of record in the previous litigation, a word must be added with respect to the status of McClure. It is the opinion of this court that it need not reach the question of whether plaintiff McClure was "in privity" with Courtesy in the California antitrust action. Rather, it is dispostivie that the only injury alleged, in its totality, has been redressed in a prior suit and is the same injury said to have been incurred by two plaintiffs instead of one. If, as both plaintiffs admit, the injury sustained is that same injury litigated and satisfied in California, it matters not that plaintiff McClure was not a party of record therein. His status does not alter the fact that the injury is identical in both suits in question. Furthermore, it would appear that McClure's injury, if any, is inextricably linked to that loss suffered by Courtesy in all respects. It is uncontroverted in the pleadings and plaintiffs' answers to interrogatories that McClure sustained no injury separate from that sustained by Courtesy, recovered by Courtesy in California and alleged anew in this court. The injury to Courtesy was the only possible injury to McClure and, for the same reasons that foreclose recovery by Courtesy, plaintiff McClure is likewise foreclosed. And the court is of the opinion that there is no genuine issue of fact with respect to these determinations.

Common sense and justice require that litigation have a reasonable point of terminus, and further litigation here by either of the plaintiffs would transcend that boundary.

It appearing that the injury complained of by the plaintiffs is identical to that injury for which damages have already been ascertained, awarded and satisfied, and that there is no genuine dispute as to any fact material thereto, the plaintiffs are not entitled to further damages attributable to that injury. The fact that this court might well agree with the Court of Appeals for the Ninth Circuit that the damages awarded in the antitrust action seem "quite low in the circumstances," [5] does not affect the legal effect of the determination.

Accordingly, it is ordered that the defendant's Motion for Summary Judgment be, and the same is hereby, granted, both as to plaintiff Courtesy Chevrolet, Inc., and plaintiff R. Mitchel McClure.

---

5. Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' and Exhibitors' Association, 393 F.2d 75, 77.