Mary Elizabeth HARTSFIELD, Plaintiff,

v.

SEAFARERS INTERNATIONAL UNION, ATLANTIC, GULF, LAKES, AND INLAND WATERS DISTRICT (AFL–CIO), and Seafarers International Union of North America (AFL–CIO), Defendants.

Civ. A. No. 75–635–H.

United States District Court, S. D. Alabama, S. D.

Feb. 18, 1977.

Jerry O. Lorant, Birmingham, Ala., for plaintiff.

Otto E. Simon and Jonathan P. Gardberg, Mobile, Ala., for defendants.

HAND, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The defendants having filed motion for summary judgment and the Court having considered the exhibits, the legal briefs, and the arguments of counsel, finds as follows:

### I. FINDINGS OF FACT

1. Robert Earl Kiedinger died on or about December 30, 1974, while on board the vessel SS "EAGLE VOYAGER", a tanker of American registry, while said ship was docked in the Port of Odessa, U.S.S.R. At the time of his death, Robert Earl Kied-

inger was a member of the crew of the SS "EAGLE VOYAGER".

2. Mary Elizabeth Hartsfield, the sister and personal representative of the decedent's three minor children, on April 2, 1975, brought an action on her own behalf and for the decedent's three minor children against the owner and operator of the vessel, SS "EAGLE VOYAGER" in the Circuit Court for the Tenth Judicial Circuit of Alabama. The complaint was a pro se complaint and charged that the vessel was unseaworthy and that the shipowner was negligent and failed to provide the decedent with a safe place to work. Damages were sought in the amount of $180,000 under the Jones Act, the Death on the High Seas Act, 46 U.S.C. §§ 761–768, and the General Maritime Law as established in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). On that same date counsel for the shipowner and operator simultaneously filed an agreement for a judgment by consent for the full $180,000 asked by the Plaintiff as total damages. The court appointed an attorney to represent the interests of the minor children and, after considering the matter, entered a final judgment in the amount of $180,-000.00.

3. The said $180,000 judgment has been satisfied and paid in full and the proceeds of said judgment have been accepted by the Plaintiff in the instant lawsuit and the persons on whose behalf the present lawsuit was instigated or their legal guardians.

4. After receiving the benefits of the judgment described above, the Plaintiff filed the present action against the United States of America in the United States District Court for the Northern District of Alabama on December 30, 1975. The complaint charged that the United States Coast Guard undertook to evaluate the mental and/or psychological suitability of James Hendrix to be a merchant seaman and a crew member on a United States Merchant Marine vessel. The complaint further alleges that the investigation and evaluation were performed negligently, that the

Coast Guard knew or should have known that James Hendrix was mentally or psychologically unsuited and that the Coast Guard should not have issued James Hendrix seaman's documents. The complaint against the United States of America was brought under the Death on the High Seas Act and for wrongful death under the General Maritime Law.

5. On December 30, 1975, the Plaintiff also brought the present action against the Defendant, Seafarers International Union of North America. The complaint, as last amended, was brought by the Plaintiff, Mary Elizabeth Hartsfield, as the personal representative of Robert Earl Kiedinger, on behalf of the minor children of Robert Earl Kiedinger. The Defendants, in the complaint as last amended, are the Seafarers International Union (AFL–CIO), and Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District (AFL–CIO). The amended complaint sought to state a claim against the union defendants under the Death on the High Seas Act and the General Maritime Law.

The amended complaint alleges that the union undertook the duty of supplying a crew to the owner of the SS "EAGLE VOYAGER" for the operation of the vessel and that they performed this duty negligently in that they caused James Hendrix to be a member of the crew of the vessel when they knew or should have known that James Hendrix was unstable and dangerous to his fellow crew members. The complaint further alleges that said James Hendrix killed Robert Earl Kiedinger and that the death of Kiedinger was the proximate result of the misconduct of the Union Defendants.

6. The action against the United States was transferred to this district and consolidated with the Plaintiff's action against the Union Defendants.

7. The United States of America and the Union Defendants both moved for summary judgment and all parties submitted affidavits and exhibits in support of their respective positions.

## II. CONCLUSIONS OF LAW

A. PLAINTIFF IS BARRED FROM RECOVERY AGAINST THE DEFENDANTS HEREIN BECAUSE THE PLAINTIFF HAS HAD. JUDGMENT AND SATISFACTION AGAINST A JOINT TORTFEASOR IN AN EARLIER ACTION ON THE SAME FACTS AND FOR THE SAME INJURY.

1. If Plaintiff's allegations against the Defendants herein are accepted as true for purposes of argument, then the Defendants herein stand as joint tortfeasors with the shipowner in that their conduct joined in producing Plaintiff's alleged injury. See *Viehweg v. Mountain States Telephone & Telegraph Co.*, 141 F.Supp. 848 (E.D.Idaho 1956).

2. The pervasively accepted rule is that where a plaintiff has obtained a judgment against one joint tortfeasor and that judgment has been satisfied, the plaintiff is barred from seeking recovery from another joint tortfeasor. *Sessions v. Johnson*, 95 U.S. 347, 24 L.Ed. 596 (1877); *McPherson v. Amalgamated Sugar Company*, 271 F.2d 809 (9th Cir. 1959); *Eberle v. Sinclair Prairie Oil Co.*, 120 F.2d 746 (10th Cir. 1941); *Courtesy Chevrolet, Inc. v. Beech*, 347 F.Supp. 669 (M.D.Tenn.1972); *Pillo v. Reading Company*, 232 F.Supp. 761 (E.D.Pa. 1964); *Presser v. United States*, 218 F.Supp. 108 (E.D.Wis.1963); *Gentry v. Jett*, 173 F.Supp. 722 (W.D.Ark.1959), aff'd 273 F.2d 388 (8th Cir. 1960); *Viehweg v. Mountain States Telephone & Telegraph Co.*, supra; *Garvin v. Osterhaus*, 125 F.Supp. 729 (E.D.Okl.1954); *Muise v. Abbott*, 60 F.Supp. 561 (D.Mass.1945), aff'd 160 F.2d 590 (1st Cir. 1947).

3. The law of the State of Alabama is in complete accord. *Boles v. Steel*, 48 Ala. App. 268, 264 So.2d 191, *cert. denied*, 288 Ala. 732, 264 So.2d 194 (1972); *Baggett v. Allen*, 276 Ala. 423, 163 So.2d 209 (1964); *Brooks v. City of Birmingham*, 239 Ala. 172, 194 So. 525 (1940); *Bradford v. Carson*, 223 Ala. 594, 137 So. 426 (1931); *Steenhuis v. Holland*, 217 Ala. 105, 115 So. 2 (1927); *Jones v. Russell*, 206 Ala. 215, 89 So. 660 (1921); *Huey v. Dykes*, 203 Ala. 231, 82 So. 481 (1919); *McCoy v. Louisville & N.R. Co.*, 146 Ala. 333, 40 So. 106 (1906).

4. The rationale behind the rule is that of preventing unjust enrichment and conservation of the courts' resources. Having had a judgment satisfied, the injured party has been made whole and can be compensated but once. *McPherson v. Amalgamated Sugar Company, supra*; *Pillo v. Reading Company, supra*; *Baggett v. Allen, supra*. The rule prevails in admiralty as elsewhere that no one may recover compensatory damages more than once. *Muise v. Abbott, supra*; *Smith v. Lykes Bros. Corp.*, 105 F.2d 604 (5th Cir.), *cert. denied*, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939). Where there has been a judgment and satisfaction, there is a conclusive presumption that full damages have been awarded. *Jones v. Russell, supra*; *McCoy v. Louisville & N. R. Co., supra*.

5. In the present case, the Plaintiff and the shipowner entered into a consent judgment agreement. A judgment was entered after due consideration by the Court and the minor beneficiaries were represented by an attorney and guardian ad litem. A consent judgment pursuant to agreement by the parties has the same force and effect as any other judgment and is a final adjudication. *A. D. Juillard & Co. v. Johnson*, 166 F.Supp. 577 (S.D.N.Y.1957), aff'd 259 F.2d 837 (2d Cir. 1958).

6. In the present case, the Plaintiff brought her first action against the shipowner and recovered $180,000 by a judgment of the state court. Plaintiff had claimed that amount as her "total damages". The amount was accepted because the Plaintiff did not want to have a trial and because this amount was the most she thought she could obtain.

7. The Plaintiff brings these actions on identical causes of action as the earlier action against the shipowner and recites the same damages. It is readily apparent that Plaintiff accepted satisfaction of her earlier

judgment as full satisfaction of her cause of action. She is precluded by abundant precedent from splitting her causes and pursuing additional recovery from alleged joint tortfeasors. Any attempted explanation that subsequent to the first judgment the Plaintiff learned facts that she felt entitled her to greater recovery is irrelevant to this question. Plaintiff is presumed to know her damages and her failure to know them does not make a judgment any less effective.

## B. PLAINTIFF CANNOT RECOVER AGAINST THE UNION DEFENDANTS UNDER THE DEATH ON THE HIGH SEAS ACT OR THE GENERAL MARITIME LAW.

### a. Death on the High Seas Act

1. Under the Death on the High Seas Act, 46 U.S.C. §§ 761–768, the personal representative of a deceased seaman is authorized to bring an action against a vessel, a person, or a corporation whose wrongful acts, neglects, and defaults occurring in international waters cause the death of the seaman. To render a vessel, person or corporation liable under the Death on the High Seas Act, there must be a violation of some legal duty owed to the decedent. *The Black Gull*, 82 F.2d 758 (2d Cir. 1936), *cert. denied* 298 U.S. 684, 56 S.Ct. 954, 80 L.Ed. 1404. Only those wrongful acts, neglects, or defaults which would produce causes of action for a living person are preserved by the Act. *Noel v. United Aircraft Corp.*, 204 F.Supp. 929 (D.Del.1962), aff'd in part 342 F.2d 232 (3rd Cir. 1964). Consideration must be given, therefore, to the questions of who has the duty to protect a crewman on a vessel from assaults and under what circumstances the duty exists.

2. In an early case under the Jones Act, 46 U.S.C. § 688, a seaman who was stabbed by a fellow crew member, after the Master of the vessel was informed of previous violence and a death threat issued by the assailant on the same voyage, was held entitled to recover. *Kyriakos v. Polemis*, 63 F.Supp. 19 (S.D.N.Y.1945). The Court found that, under the circumstances, the Master was negligent in failing in *his duty to protect the crew*. In paragraph 7 of the complaint, Plaintiff alleges that decedent had requested the vessel's operator to remove Hendrix from the vessel. It would appear that the similar warnings of possible violence were given in the instant case as were given in *Kyriakos v. Polemis, supra*, and the Master and the vessel owner were charged with taking steps to protect the crew. The company has the right to discharge any unlicensed crew member and the authority of the Master is not questioned. A labor organization is not charged with safeguarding crew members from violence while they are at sea, nor is a union in any position to supervise or discharge a crew member.

3. A seaman who is assaulted may, under proper circumstances, recover damages for breach of the warranty of seaworthiness. *Boudoin v. Lykes Brothers Steamship Co.*, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). However, recovery in such a case may be had only against the vessel owner or operator. The history of litigation arising out of an assault by a fellow crew member, whether the theory of liability has been unseaworthiness, negligence, or respondeat superior, has dealt with the liability of the *shipowner* to the injured seaman. See *Annotation*, 99 L.Ed. 359. The fact that the assault, in the instant case, may have resulted in death should create no greater right of action for Plaintiff than her decedent would have had and should attach no greater liability to defendants. *Noel v. United Aircraft Corp.*, supra.

4. The Death on the High Seas Act applies to death caused by "wrongful act, neglect, or default occurring on the high seas." 46 U.S.C. § 761. Plaintiff, in her complaint, cites no wrongful act, neglect, or default of the referring labor union which could have occurred on the high seas. In fact, no wrongdoing by the union is alleged to have occurred even in territorial waters.

The referral to a job vacancy, which Plaintiff contends was wrongful, took place within the United States, ashore, and all records pertaining to such referrals are maintained ashore. If the wrongful act alleged did not occur more than one marine league from the shore of a state, no claim upon which relief may be granted exists and the District Court is without jurisdiction under the Death on the High Seas Act. *Ridgedell v. Olympic Towing Corporation*, 205 F.Supp. 952 (E.D.La.1962). The labor union maintains no supervision over an individual who is referred by it to employment and is precluded by contract from interfering with the authority of the ship's officers. The union cannot guaranty that personal quarrels among seamen will not arise during a long voyage and result in sudden violence, injury, or death. Even a vessel owner is not held to that duty. *Smith v. American Mail Line, Ltd.*, 361 F.Supp. 1110 (W.D.Wash.1973).

■ 5. Once they are aware of actions which indicate that a seaman may do harm to others or to himself, the ship's officers must take steps to prevent that harm from occurring. Negligent breach of the duty to protect the crew imposes liability upon the vessel and its owner. *Whitaker v. Blidberg-Rothchild Company*, 195 F.Supp. 420 (E.D.Va.1961), aff'd. 296 F.2d 554 (4th Cir. 1961). There is no authority or precedent in the law for holding a labor union liable because an individual referred to employment by it later committed an act of violence. Inasmuch as a union has neither authority nor opportunity to supervise and monitor the actions of crew members at sea, it has not and should not be found to have a duty to protect the crew. The union cannot reasonably foresee that an individual crew member will become violent and cannot insure itself for such a contingency. The crew member is not an agent or employee of the labor union. If unions are called upon to respond in tort for injuries to seamen, unions will in effect be given the duty of providing a safe and seaworthy vessel. Such a result would reverse the traditional relationship of the master to crew and would force unions to seek to control the conditions of employment while vessels are at sea. These results could not have been intended to flow from the Death on the High Seas Act.

b. General Maritime Law

■ 1. In addition, or in the alternative, Plaintiff alleges that her cause of action arises under the general maritime law as set forth in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The *Moragne* case held that an action for wrongful death lies under general maritime law for breach of *maritime duties* (emphasis added). The injury which resulted in death in *Moragne* occurred in territorial waters off the coast of Florida. After Plaintiff commenced an action under the Florida Wrongful Death Act, alleging unseaworthiness, defendant removed the case to the Federal Court on the ground of diversity. Cases subsequent to *Moragne, supra*, have considered its holding closely, limiting it to an action for wrongful death based upon unseaworthiness, *Sealand Service, Inc. v. Gaudet*, 414 U.S. 573, 574, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), and confining it to situations where there is a breach of a maritime duty. *Mungin v. Calmar Steamship Corp.*, 342 F.Supp. 479 (D.Md.1972).

■ 2. In the instant case, the alleged wrongful or negligent act took place, if at all, in Houston, Texas. Assuming. *arguendo*, that the facts are as set forth in Plaintiff's complaint, the labor organization has no maritime duty toward Plaintiff or any other individual aboard the vessel. The union's obligation toward the vessel owner or operator is to refer individuals who have the proper licenses and documents to perform the required work and that obligation is contractual in nature. The union's obligations toward individual crew members arise under the labor laws of the United States, rather than general or statutory maritime law. The union is required by various provisions of the Taft-Hartley Act and the Landrum-Griffin Act to fairly and

**270**

adequately represent such persons in collective bargaining and to refrain from discriminating against such individuals with regard to referral to employment or for the exercise of their rights as union members and/or employees. The unions owed no safety duty to Plaintiff's decedent independent of their duty of fair representation arising from the Federal labor laws. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed. 842; *Bryant v. International Union*, 467 F.2d 1 (6th Cir. 1972); *House v. Mine Safety Appliance Co.*, 417 F.Supp. 939, 92 LRRM 3690, (D.C.Idaho 1976); plaintiff never attempted to state a claim for breach of the duty of fair representation and no such claim can reasonably be read into her complaint.

 Previously cited cases have demonstrated that the warranty of seaworthiness, under which suits pursuant to *Moragne v. States Marine Lines* are authorized, is given by the owner and operator of the vessel. *Boudoin v. Lykes Brothers Steamship, Inc.*, *supra.* The owner of a vessel warrants to its crew that each seaman shall be equal in disposition to ordinary men in the calling. *Keen v. Overseas Tankships Corp.*, 194 F.2d 515 (2nd Cir. 1952), *cert. den.*, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952); *Smith v. American Mail Line, supra.* The labor union makes no warranty to the seaman as to the disposition of the crew or other factors bearing upon the seaworthiness of the vessel. Viewing the allegations of the complaint in a light most favorable to plaintiff, there was no maritime duty owed by a labor union to plaintiff's decedent.